Filed 12/17/20  P. v. Scott CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>LEE MICHAEL SCOTT,<br><br>    Defendant and Appellant. | B299549<br><br>(Los Angeles County<br>Super. Ct. No. GA104435) |

THE COURT:

Defendant and appellant Lee Michael Scott (defendant) appeals his conviction of first degree burglary.  His appointed counsel filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*), raising no issues.  On August 17, 2020, we notified defendant of his counsel's brief and gave him leave to file, within 30 days, his own brief or letter stating any grounds or argument he might wish to have considered.  That time has elapsed, and defendant has submitted no brief or letter.  We have reviewed the

entire record, and finding no arguable issues, affirm the judgment.

Defendant was charged in a one-count information with first degree burglary in violation of Penal Code section 459. He was convicted as charged, and on June 26, 2019, the trial court sentenced him to the middle term of four years in prison. (See Pen. Code, § 461, subd. (a).) Minimum fines and fees were imposed,[1] and presentence custody credit was calculated as 537 days, which included 269 days of actual time. A restitution hearing was scheduled for the following month but taken off calendar at the People's request. Defendant filed a timely notice of appeal from the judgment.

In 2018, Ike Shamieh (Shamieh) had lived in his rural canyon neighborhood for 17 years. Defendant's family lived in the next house over with an empty lot between them. During much of the summer of 2018, defendant stayed at his family home. Shamieh had two unpleasant encounters with defendant when defendant parked on Shamieh's property. The most recent was in July 2018, when defendant gave Shamieh the middle finger after Shamieh told defendant he could not park there.

Shamieh was away from his home for about a week beginning July 25, 2018. When he returned home on Thursday August 2, the front door was wide open. The interior of the house had been vandalized, ransacked, flooded and nearly destroyed. Prescription medication, jewelry and money had been taken. There was blood on door handles, door jams, and towels. Shamieh found shoes in the driveway, and in the house he found

---

[1] Appellate counsel represents that the trial court waived the financial obligations at a hearing on August 6, 2020.

a sock, belt and wallet that were not his. The shoes were later identified as belonging to defendant. Defendant's identification card was found in the wallet. DNA from one of the blood stains on the interior of the bathroom door was tested and found to match defendant's DNA.

On Sunday, July 29, a neighbor who lived across the street from Shamieh saw defendant banging on Shamieh's front door, yelling, "Is anybody home? "Anybody home?" The next day, the neighbor saw the front door standing open. The door was still open on Tuesday, July 31. Early Wednesday morning, August 1, another neighbor heard yelling outside, saw a barefoot man, dressed only in jeans, running back and forth alone yelling something he could not make out. He appeared to be under the influence of drugs, having a "bad trip." The neighbor called 911 about 20 minutes later.

At approximately 5:30 a.m. on August 1, a firefighter at a nearby fire station, heard yelling and screaming outside. Soon afterward, a motorist came to the station, and reported that a man was running down the road, naked. Three firefighters then went in the direction of the yelling and found the naked man, later identified as defendant, on the side of the road. Defendant had road rash on his arms and legs and a bleeding laceration across his neck. His injuries were consistent with having been hit by a car. Defendant was jittery, sweating profusely, and appeared to be under the influence of something. He smelled of alcohol, and told a paramedic that he had smoked marijuana and consumed alcohol. Defendant told another firefighter that he had been jumped, beaten up, was trying to get away as he was worried that they would come after him. Deputy Sheriff Sevada Gorgyan arrived on the scene while defendant was being treated.

3

Defendant initially said that he had been hit by a car, but then paused and said, "A couple guys jumped me."

Defendant was arrested in October 2018 and interviewed by Detective Anthony Meyers the next day. Defendant claimed that he had never been in any house in the area except his mother's house.

Defendant testified at trial that in the summer of 2018, he was living in an R.V. on his mother's property, next to Shamieh's property. Defendant testified that he drank alcohol and smoked marijuana daily because he was in pain from injuries suffered in an auto accident 10 years earlier. He added that the night before August 31, 2018, he drank half of a fifth of vodka and smoked marijuana. He then got up at 5:00 a.m., drank more vodka and an energy beer, and smoked marijuana. Defendant then claimed to have heard a breaking sound and arguing coming from Shamieh's house. Seeing that the front door was wide open, and thinking someone might be hurt, he walked over and said, "Hello. Is everybody okay? Does anybody need help?" He thought he heard someone say "Yes, in here," so he went inside, where he saw broken glass on the bathroom floor. A man appeared in the hallway and attacked him. Defendant tried to run from the house, but was intercepted by another man with a knife. The first man tripped him and pushed him into the bathroom, where both men pinned him down on broken glass, holding the knife at his throat. The assailants then told him to "get the fuck out of here," and "Don't tell anybody."

Defendant ran to the next street, tried to waive down a motorist. A car stopped, and defendant asked for help, saying that someone was going to attack him. As he crossed in front of the car to get to the passenger side, the driver "floored it" and hit

4

him, knocking him up onto the hood. The driver then slammed on his brakes, causing defendant to slide off onto the road, before driving away. Defendant explained that he was naked because he had been wearing oversized jeans which fell to his ankles when he put his hands up.

We have examined the entire record and are satisfied that defendant's appellate counsel has fully complied with her responsibilities and that no arguable issue exists. We conclude that defendant has, by virtue of counsel's compliance with the *Wende* procedure and our review of the record, received adequate and effective appellate review of the judgment entered against him in this case. (*Smith v. Robbins* (2000) 528 U.S. 259, 278; *People v. Kelly* (2006) 40 Cal.4th 106, 123-124.)

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____

LUI, P.J.          ASHMMAN-GERST, J.          CHAVEZ , J.